UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MKEKE INC. (dba MKEKE, dba MAIKEKE, dba MAKE)<br><br>                      *Plaintiff*,<br><br>    v.<br><br>BELAIR ELECTRONICS, INC.,<br><br>                      *Defendant*. | Case No. 1:25-cv-13048<br><br>**Jury Demand** |

**COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND INVALIDITY**

Plaintiff MKEKE INC. (doing business as MKEKE, MAIKEKE, and MAKE) ("MKEKE" or "Plaintiff"), for its Complaint against Defendant BelAir Electronics, Inc. ("Belair" or "Defendant"), alleges as follows:

NATURE OF THE ACTION

1. This is a civil action for a declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, Title 35 of the United States Code, §§ 100 et seq.

2. MKEKE seeks a judicial declaration that it has not infringed and does not infringe any valid and enforceable claim of United States Patent No. 7,941,195 (the "'195 Patent") and United States Patent No. 10,097,676 (the "'676 Patent") (collectively, the "Asserted Patents").

3. MKEKE further seeks a judicial declaration that the Asserted Patents are invalid for failure to comply with the conditions for patentability set forth in Title 35 of the United States Code and are therefore unenforceable.

1

4. This action is necessary to resolve an actual, substantial, and continuing controversy between MKEKE and Belair. This controversy was created by Belair's direct and unequivocal accusations that MKEKE's products infringe the Asserted Patents, which culminated in Belair's intention of filing a patent infringement lawsuit against MKEKE in the United States District Court for the District of Delaware. MKEKE brings this action to vindicate its rights, protect its business and customers, and resolve the cloud of uncertainty that Belair has cast over MKEKE's lawful business operations.

## THE PARTIES

5. Plaintiff MKEKE INC. is a corporation duly organized and existing under the laws of the State of Delaware. MKEKE is a legitimate and innovative enterprise engaged in the design, marketing, and sale of high-quality mobile phone accessories, including the protective cases that Belair has wrongfully accused of infringement.

6. Upon information and belief, Defendant Belair Electronics, Inc. is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 5723 Antler Lane, Westmont, Illinois 60559.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because MKEKE's claims for declaratory judgment of non-infringement and invalidity arise under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

8. An actual and justiciable controversy exists between MKEKE and Belair regarding the infringement and validity of the Asserted Patents, sufficient to establish jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This controversy is evidenced by Belair's affirmative acts, including its intention of filing of a lawsuit against MKEKE in the District of Delaware, expressly accusing MKEKE of infringing the Asserted Patents.

9. This Court has personal jurisdiction over Belair because Belair's principal place of business is located in Westmont, Illinois, within this judicial district. Belair is therefore "at home" in Illinois and is subject to general personal jurisdiction in this Court.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Belair resides in this District by virtue of maintaining its principal place of business here, and is therefore subject to the Court's personal jurisdiction.

## FACTUAL BACKGROUND

**A. The Asserted Patents are Expired and Relate to Crowded, Decades-Old Technology**

11. Belair's claims are based on two utility patents: the '195 Patent and the '676 Patent, both titled "Protective Mask of Mobile Phone". Both patents claim priority back to a Chinese patent application filed on November 17, 2000—nearly a quarter of a century ago and long before the advent of the modern smartphone.

12. Critically, both of the Asserted Patents are expired. Belair's own complaint draft concedes that the '195 Patent expired on or about November 16, 2022, and the '676 Patent expired on or about October 23, 2021. *See* Exhibits A-B.

13. Because the Asserted Patents are expired, Belair cannot seek or obtain an injunction to stop MKEKE from selling its products. This dispute is solely a retrospective demand for money damages based on alleged infringement of old, expired patents directed to rudimentary concepts in the crowded field of mobile phone cases.

**B. MKEKE's Accused Products Do Not Infringe the Asserted Patents**

14. MKEKE designs, markets, and sells modern, high-quality protective cases for contemporary mobile phones. These products utilize common, well-known, and conventional design principles that have been ubiquitous in the mobile accessory industry for many years.

3

15. Belair's infringement allegations are based on an untenable and overly broad interpretation of the patent claims. Belair's complaint alleges that MKEKE's products infringe because they supposedly possess "flanges" as recited in Claim 9 of the '195 Patent, or "at least one retainer" as recited in Claims 1, 5, 8, and 9 of the '676 Patent.

16. Belair's theory appears to be that any lip or raised edge on a phone case, which serves to hold the phone in place, constitutes a "flange" or "retainer." This interpretation is inconsistent with the patent specifications and prosecution histories and would improperly read the claims to cover nearly every phone case ever made.

17. MKEKE's products do not contain the specific structures claimed in the Asserted Patents as those claims would be properly construed by a court. Instead, MKEKE's products employ generic design features, such as slightly raised edges for screen protection, that are fundamentally different from the claimed inventions and are standard in the industry.

18. Belair's failure to conduct a reasonable pre-suit investigation is evidenced by the generic, conclusory nature of its infringement contentions and the exemplary claim charts it has used in other enforcement actions, which rely on broad dictionary definitions rather than a proper analysis grounded in the patent's intrinsic evidence.

**C. Belair is a Non-Practicing Entity with a Business Model Based on Mass Litigation**

19. Upon information and belief, Belair is a Non-Practicing Entity ("NPE"), colloquially known as a "patent troll".

20. Upon information and belief, Belair does not practice the Asserted Patents. It does not engage in any research, development, manufacturing, or sales of any products or services. Its sole business activity consists of acquiring and asserting patents against a vast number of legitimate, product-producing companies like MKEKE.

21. Belair's business model is to monetize its patent portfolio by sending demand letters and filing lawsuits against dozens of companies, alleging infringement based on vague and overbroad claim interpretations. It seeks to extract nuisance-value settlements from companies who determine that paying Belair is less expensive than enduring the significant cost and burden of defending against a patent infringement suit, regardless of its merits.

### D. Belair's Nationwide Campaign of Serial Litigation

22. Belair's lawsuit against MKEKE is not an isolated enforcement effort. Rather, it is one small part of a sprawling, nationwide litigation campaign Belair has waged for years against companies in the mobile accessory industry, all based on the same expired Asserted Patents.

23. Upon information and belief, Belair has filed dozens of lawsuits across the country against a wide array of companies, from small businesses to larger corporations. This pattern of serial litigation demonstrates that Belair's activities are not aimed at protecting a market for its own products—as it has none—but are instead a calculated business strategy of monetizing patents through litigation.

24. Between 2020 to 2025, Belair has started at least 29 cases in federal courts around the country.

25. This extensive litigation history reveals a clear and deliberate strategy. Belair routinely files lawsuits and then quickly seeks settlements, resulting in a high volume of voluntary dismissals, often before any substantive legal rulings are made by the court.

26. This practice is not accidental; it is a calculated effort to avoid a critical judicial determination on the merits, particularly a claim construction ruling. A court order that narrowly construes key terms like "flanges" or "retainer" would undermine Belair's entire enforcement campaign, as its business model depends on maintaining the ambiguity of these terms to cast the widest possible net of alleged infringement. By settling cases before such rulings, Belair preserves its ability to continue threatening and suing other companies based on its same overbroad and unsupported infringement theories.

5

**E. An Actual and Immediate Controversy Exists Between MKEKE and Belair**

27. Belair has created an actual, immediate, and substantial controversy between the parties by the intention of filing a Complaint for Patent Infringement against MKEKE in the United States District Court for the District of Delaware.

28. In its complaint, Belair expressly alleges that MKEKE's protective cases for mobile devices infringe at least Claim 9 of the '195 Patent and Claims 1, 5, 8, and 9 of the '676 Patent. Belair seeks an award of damages for this alleged infringement.

29. Belair's affirmative and aggressive enforcement actions have placed MKEKE in the position of having to defend itself against baseless infringement accusations. A judicial declaration is necessary and appropriate to determine the parties' respective rights, resolve the controversy that Belair has created, and allow MKEKE to conduct its business free from the threat of liability for infringing invalid and non-infringed patents.

**F. The Asserted Patents are Undergoing Reexamination by the U.S. Patent and Trademark Office**

30. On August 25, 2025, third-party requests for *ex parte* reexamination were filed with the U.S. Patent and Trademark Office ("USPTO") for both the '195 Patent and the '676 Patent. *See* Exhibits C-D.

31. In September 2025, the USPTO granted both requests, instituting reexamination proceedings for both Asserted Patents. In doing so, the USPTO determined that "a substantial new question of patentability" exists with respect to claims 1-12 of both the '195 Patent and the '676 Patent. *See* Exhibits E-F.

32. For the '195 Patent, the USPTO found that new prior art not considered during the original examination, specifically Chinese Patent Document No. CN 2402067 Y ("CN '067") and German Patent Document No. DE 19837765 A1 ("DE '765"), raised a substantial new question of patentability regarding claim 9. The examiner found that these references teach a protective mask with "flanges"

6

that allow the mask to be coupled to the mobile phone, directly addressing a key limitation of the asserted claim. *See* Exhibits G-H.

33. For the '676 Patent, the USPTO found that the same new prior art references, CN '067 and DE '765, raised a substantial new question of patentability for claims 1-12. The examiner noted that these references appear to teach the very limitations that were the basis for the patent's allowance, including a mask with "continuous surface to surface contact to a mobile communication device with no substantial space and a retainer retaining the mask to the case".

34. The USPTO's independent determination that substantial new questions of patentability exist for the very claims Belair asserts against MKEKE, based on prior art that was never considered during the original examination, is a powerful confirmation that the Asserted Patents are likely invalid and should never have been granted.

## COUNT I
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,941,195)

35. MKEKE incorporates by reference the allegations set forth in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

36. An actual and justiciable controversy exists between MKEKE and Belair concerning whether MKEKE's products infringe the '195 Patent.

37. MKEKE's products have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of the '195 Patent, either literally or under the doctrine of equivalents.

38. Specifically, and without limitation, MKEKE's accused products do not meet each and every limitation of asserted Claim 9 of the '195 Patent. MKEKE's products do not have a "first mask portion having flanges to allow the first mask portion to be coupled to the mobile phone to retain the first mask portion to the first portion of the exterior housing" as that limitation is properly construed in light of the '195 Patent's specification and prosecution history.

39. A judicial declaration that MKEKE has not infringed and does not infringe any claim of the '195 Patent is necessary and appropriate to resolve the controversy between the parties.

## COUNT II
### (Declaratory Judgment of Invalidity of U.S. Patent No. 7,941,195)

40. MKEKE incorporates by reference the allegations set forth in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

41. An actual and justiciable controversy exists between MKEKE and Belair concerning the validity of the '195 Patent.

42. Each and every claim of the '195 Patent is invalid for failing to meet one or more of the conditions for patentability set forth in Title 35 of the United States Code.

43. Further confirming the patent's invalidity, on September 12, 2025, the USPTO granted a request for *ex parte* reexamination of the '195 Patent, finding that a substantial new question of patentability exists for claims 1-12 based on prior art that was not previously considered by the examiner. *See* Exhibit F.

44. Upon information and belief, the claims of the '195 Patent, including at least Claim 9, are invalid under 35 U.S.C. §§ 102 and/or 103 as anticipated by or obvious in view of prior art that existed before the patent's claimed priority date of November 17, 2000. Such prior art includes, but is not limited to, the following references: a. PCT Publication WO 98/17088 ("Replaceable Decorative Covering for an Eclectic Appliance"); b. Japanese Patent No. JP2923257B2 ("Mobile Phone Protective Cover") ; c. U.S. Patent No. 5,768,370 ("User Changeable Cosmetic Phone Interface") ; d. U.S. Patent No. 5,848,152 ("Communication Device Having Interchangeable Faceplates and Active keypad Cover") ; and e. U.S. Patent No. 6,347,218 ("Electronic Device with Housing Supplement").  *See* Exhibits I-M.

45. Upon information and belief, the claims of the '195 Patent are also invalid under 35 U.S.C. § 112 for indefiniteness. Key claim terms, including but not limited to "adapted to be coupled," are not described or defined in the specification with sufficient clarity to inform a person of ordinary skill in the art of

8

the scope of the invention with reasonable certainty.

46. A judicial declaration that the '195 Patent is invalid is necessary and appropriate to resolve the controversy between the parties.

## COUNT III
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 10,097,676)

47. MKEKE incorporates by reference the allegations set forth in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

48. An actual and justiciable controversy exists between MKEKE and Belair concerning whether MKEKE's products infringe the '676 Patent.

49. MKEKE's products have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of the '676 Patent, either literally or under the doctrine of equivalents.

50. Specifically, and without limitation, MKEKE's accused products do not meet each and every limitation of asserted Claims 1, 5, 8, and 9 of the '676 Patent. MKEKE's products do not have "at least one retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space" as that limitation is properly construed in light of the '676 Patent's specification and prosecution history.

51. A judicial declaration that MKEKE has not infringed and does not infringe any claim of the '676 Patent is necessary and appropriate to resolve the controversy between the parties.

## COUNT IV
### (Declaratory Judgment of Invalidity of U.S. Patent No. 10,097,676)

52. MKEKE incorporates by reference the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

53. An actual and justiciable controversy exists between MKEKE and Belair concerning the validity of

9

the '676 Patent.

54. Each and every claim of the '676 Patent is invalid for failing to meet one or more of the conditions for patentability set forth in Title 35 of the United States Code.

55. Further confirming the patent's invalidity, on September 3, 2025, the USPTO granted a request for *ex parte* reexamination of the '676 Patent, finding that a substantial new question of patentability exists for claims 1-12. The USPTO instituted reexamination based on new prior art that teaches the very limitations—a retainer and surface-to-surface contact—that were the basis for the patent's allowance. *See* Exhibit E.

56. Upon information and belief, the claims of the '676 Patent, including at least Claims 1, 5, 8, and 9, are invalid under 35 U.S.C. §§ 102 and/or 103 as anticipated by or obvious in view of the same prior art references listed in paragraph 38, all of which predate the '676 Patent's claimed priority date of November 17, 2000. The concepts of protective cases with frictional retention and retaining structures were well known in the art long before the claimed invention.

57. Upon information and belief, the claims of the '676 Patent are also invalid under 35 U.S.C. § 112 for indefiniteness and lack of written description. Key claim terms, including but not limited to "frictional retention," "integrally-formed mask body," "substantially continuous surface-to-surface contact," and "retainer," are not adequately described, defined, or enabled by the specification, rendering the claims indefinite and invalid.

58. A judicial declaration that the '676 Patent is invalid is necessary and appropriate to resolve the controversy between the parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MKEKE INC. respectfully prays that the Court enter judgment in its favor and against Defendant Belair Electronics, Inc., granting the following relief:

A. declaration that MKEKE has not infringed, directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent No. 7,941,195;

B. A declaration that U.S. Patent No. 7,941,195 is invalid and unenforceable;

C. A declaration that MKEKE has not infringed, directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent No. 10,097,676;

D. A declaration that U.S. Patent No. 10,097,676 is invalid and unenforceable;

E. An order preliminarily and permanently enjoining Belair, its officers, agents, employees, attorneys, and all those acting in concert with it, from asserting or threatening to assert that MKEKE, its suppliers, distributors, or customers infringe the '195 Patent or the '676 Patent;

F. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award to MKEKE of its reasonable attorneys' fees, expenses, and costs incurred in connection with this action;

G. An award to MKEKE of its costs incurred in this action pursuant to 28 U.S.C § 1920; and

H. Such other and further relief as this Court deems just and proper.


Date: October 26, 2025

/s/ Ruoting Men
Ruoting Men, Esq.
GLACIER LAW LLP
506 Second Avenue, Suite 1516
Seattle, WA 98104
ruoting.men@glacier.law
212-729-5049

***Attorney for Plaintiff***